IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-01550-KLM

ROBYN D. ROSS, an individual,

Plaintiff,

v.

PROFESSIONAL BUREAU OF COLLECTIONS OF MARYLAND, INC., a Maryland corporation,
PHILLIP JUSTUS, an individual, and
TRAVIS JUSTUS, an individual,

Defendants.

---

**ORDER**

---

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **Motion to Dismiss Plaintiff's Amended Complaint and Incorporated Brief** [#19][1] (the "Motion"). Plaintiff filed a Response [#29] in opposition to the Motion [#19], and Defendants filed a Reply [#30]. The Court has reviewed the pleadings, the entire case file, and the applicable law and is sufficiently advised in the premises.[2] For the reasons set forth below, the Motion [#19] is **GRANTED in part and DENIED in part**.

## I. Background

Plaintiff is a former employee of Defendant Professional Bureau of Collections of

---

[1] "[#19]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). This convention is used throughout this Order.

[2] This case has been referred to the undersigned for all purposes pursuant to D.C.COLO.LCivR 72.2(d) and 28 U.S.C. § 636(c), on consent of the parties. *See* [#24, #27].

Maryland, Inc. ("PBCM"). *Am. Compl.* [#12] ¶¶ 1-2.[3] At various times relevant to this lawsuit, Defendant Phillip Justus and Defendant Travis Justus each served as President of Defendant PBCM and as members of the Board of Directors of Defendant PBCM.[4] *Id.* ¶¶ 3-4.

Plaintiff was hired as General Counsel of Defendant PBCM on March 29, 2013, by Defendant Travis Justus, who was the owner, founder, and then President of Defendant PBCM. *Id.* ¶ 7. Plaintiff's duties included acting as department head and mentor for managers reporting from company departments including compliance, auditing, quality assurance, human resources and legal accounts; responding to Equal Employment Opportunity Commission ("EEOC") complaints; managing outside counsel; renewing collection licenses in states where required; and filing annual reports in states where required. *Id.* ¶ 8.

Plaintiff was the mother of two young children with health conditions, i.e., a son with a potentially deadly, anaphylactic nut and peanut allergy, and a daughter with total blindness in one eye, which required special ophthalmological treatment. *Id.* ¶ 10. Throughout her employment with Defendant PBCM, Plaintiff never worked less than forty hours per week and often worked far more. *Id.* ¶ 16. She only missed one full day of work due to personal illness, as well as rare partial days to care for her children when she could find no viable alternative. *Id.* ¶ 11.

Plaintiff asserts that throughout her employment with Defendant PBCM, she noticed

---

[3] All well-pled facts from the Amended Complaint [#12] are accepted as true and viewed in the light most favorable to Plaintiff. *Barnes v. Harris*, 783 F.3d 1185, 1191-92 (10th Cir. 2015).

[4] Plaintiff does not state in the Amended Complaint [#12] whether there is a familial relation between the two individual Defendants.

examples of the company's "culture of hostility to female employees." *Id.* ¶ 17. She describes an incident in May of 2013 when the physically large, male Vice President of Operations "publicly berat[ed] and humiliat[ed]" a physically small, young female employee and immediately thereafter similarly yelled at Plaintiff. *Id.* ¶¶ 18-21. Plaintiff describes other incidents that seem to have mostly occurred in 2013 or possibly early 2014, including: (1) Defendant Travis Justus instructed a female employee to "stop being a pussy;" (2) an email was found on a company printer in which Defendant Travis Justus's son, Matthew Justice, spoke about a female compliance officer being "frigid" and referenced himself and Defendant Travis Justus's executive assistant engaging in sexual relations; (3) Defendant Travis Justus instructed Plaintiff to "smile more" at a hostile tenant in the building Defendant Travis Justus owned; (4) Defendant Travis Justus made a comment in front of the reception staff concerning Plaintiff's figure, saying that she was "not fat, but a good sized woman"; (5) Defendant Travis Justus, when speaking with Plaintiff about a food Plaintiff mentioned was high in protein, looked at Plaintiff and asked, "You know what else is high in protein?", which was apparently a reference to semen/oral sex; (6) after Plaintiff had slipped on ice outside of the office on a morning where maintenance had failed to shovel and salt the sidewalk, Defendant Travis Justus, in response to seeing her torn pant leg and bleeding knee told her, "Good, I never liked pants on you in the first place;" (7) Defendant Travis Justus would loudly discuss sexual enhancement procedures he was undergoing, such as penis injections, while knowing that Plaintiff was within earshot; (8) Defendant Travis Justus told Plaintiff, "I know you're not stupid, you're just so feminine, but that's fine, you're a woman;" (9) Defendant Travis Justus forbade Plaintiff from being friends with a subordinate female employee despite the fact that Defendant Travis Justus, Eric Brechbill (whom

Plaintiff does not further identify), and Matthew Justice all had sexual relationships with subordinate employees; (10) Defendant Travis Justus began dating a female manager but attempted to hide the relationship despite making sexually explicit phone calls to her on recorded lines; (11) Eric Brechbill secretly dated at least one female subordinate; (12) Defendant Phillip Justus made unwanted sexual advances to a receptionist over email; and (13) Defendant Phillip Justus had a habit of blatantly rubbing his genitals through his pants while speaking with female employees, including Plaintiff. *Id.* ¶¶ 22-26.

In accordance with company policy, Plaintiff reported each of these incidents to either Defendant Travis Justus or to Russ Ray ("Ray"), the head of Human Resources, but neither one ever did anything in response to her reports, and thus, "[b]y 2014, [Plaintiff] understood that she would be subject to hostility in the form of yelling, cursing, or sexual innuendo on a near daily basis." *Id.* ¶¶ 27-28. She therefore "began to withdraw from interaction with the male staff as much as possible and try to work in her office with the door closed." *Id.* ¶ 29.

On October 25, 2013, Plaintiff's son woke at 1:00 a.m with severe croup and was rushed to the emergency room, where he was not discharged until 5:00 a.m. *Id.* ¶ 30(a). Plaintiff texted Defendant Travis Justus at 2:00 a.m. advising him that she may be late, and then texted him again at 7:00 a.m. to say that she would be at work by 9:30 a.m., rather than her normal 8:00 a.m. *Id.* When she arrived at work at 9:30 a.m., Defendant Phillip Justus, to whom Plaintiff did not report and who had no role at PBCM at the time other than a position on the board, had Plaintiff "written up" in her personnel file for being late. *Id.*

In January 2014, Plaintiff received an urgent call from her son's school advising her that he was not doing well. *Id.* ¶ 30(b). Plaintiff advised Defendant Travis Justus of the

phone call. *Id.* Ten minutes later, the school called back advising her that her son had gone into anaphylactic shock and that his life was saved with an injection of epinephrine. *Id.* Plaintiff advised Defendant Travis Justus that she must leave immediately to get to the hospital, but Defendant Travis Justus's only response was to inquire as to whether Plaintiff had completed a task and put it in the mail. *Id.*

In June 2014, after Mr. Ray failed to process a vacation request which Plaintiff had submitted approximately thirty days prior, Plaintiff requested to take a vacation day to travel to New York to take her son to see an allergy specialist. *Id.* ¶ 30(c). Defendant Travis Justus's only response was to ask if she could not use a vacation day and instead only take a half day because her flight was in the afternoon. *Id.*

In October 2014, after Defendant Travis Justus had retired and appointed Defendant Phillip Justus as the new President of PBCM, Plaintiff asked to attend a short meeting a few days later at her son's school to speak to the faculty and staff about an emergency plan in the event her son experienced an anaphylactic allergy attack. *Id.* ¶ 30(d). Defendant Phillip Justus became "enraged" saying, "You can't spring these things on me," and demanded to know what other dates Plaintiff would be out of the office. *Id.* Plaintiff explained that she had just been informed of this meeting and it was an important, one-time conference for her son's safety at school. *Id.* Defendant Phillip Justus continued to complain that this meeting, scheduled for several days later, was equivalent to springing a request for time off on him. *Id.*

On December 18, 2014, after Mr. Ray again failed to process Plaintiff's vacation request which she had submitted approximately thirty days before, Plaintiff sent an email to Defendant Phillip Justus, reminding him that she would be out of the office on December

19, 2014. *Id.* ¶ 30(e). Defendant Phillip Justus again became "enraged," accused her of failing to give notice, and demanded to know what she would be doing, despite the fact that male executives took well more than their allowable time and were never hassled for it. *Id.*

After the October 2014 incident detailed above, Plaintiff realized that Defendant Phillip Justus would be worse than Defendant Travis Justus when it came to her responsibilities as a parent, and so she decided to file Family Medical Leave Act ("FMLA") paperwork to ensure that her job was not in jeopardy on the days she needed to tend to her children. *Id.* ¶ 31. Defendant Travis Justus, who was then PBCM's Chairman of the Board of Directors, learned of Plaintiff's intent to file FMLA paperwork, advised her that it was an inappropriate use of the FMLA, and told her that she should not file it. *Id.* ¶ 32.

On December 9, 2014, Plaintiff filed her FMLA paperwork with Mr. Ray in his capacity as head of Human Resources. *Id.* ¶ 33. She also informed him again that she felt targeted by the male executives and management due to being a woman and mother, and she asked him to formally document this complaint. *Id.* Instead of creating the complaint, Mr. Ray responded by writing a memo describing their interaction as Plaintiff having "gone on a tirade." *Id.* A few hours later, Defendant Travis Justus received the memo and advised Plaintiff that it was inappropriate to complain to Human Resources that policies were being unevenly enforced. *Id.* ¶ 34. He then told Plaintiff that she better "watch herself." *Id.* Immediately after, Defendant Travis Justus demanded that all state regulatory license renewals be put on his desk so he could "review" her work. *Id.* ¶ 35.

Over the following two weeks, Defendant Travis Justus began returning the license renewals to Plaintiff piecemeal and lost some of the paperwork, although he did not inform Plaintiff of this. *Id.* ¶ 36. One of the states he failed to return was the license renewal for

Nebraska. *Id.* In January of 2015, Plaintiff inquired with the Nebraska Collection Licensing Agency Board as to why PBCM had not received their renewed license. *Id.* ¶ 37. She was informed that the renewal application had not been received. *Id.* Plaintiff promptly informed Defendant Phillip Justus that PBCM could not and should not operate in Nebraska until the license was renewed, which would be in April at the earliest. *Id.* ¶ 38.

In late December of 2014, after Plaintiff filed the FMLA paperwork, Defendant Phillip Justus directed the system administer to enter Plaintiff's computer to access her LinkedIn profile and print messages between her and her predecessor, Greg Gerkin, in which they had discussed the inappropriate sexual relationships occurring at PBCM. *Id.* ¶ 40.

Plaintiff's first paycheck after filing the FMLA paperwork docked her vacation time for when she picked up her son, who had vomited, from school in the middle of the day. *Id.* ¶ 41. The policy for executives for the entire time Plaintiff had been employed with Defendant PBCM was that short time missed from work for family illness/emergencies did not need to be noted as vacation time. *Id.* When Plaintiff asked about this discrepancy, Defendant Travis Justus told her he docked her on this occasion because she filed FMLA paperwork. *Id.* His words were, "You're the one that turned that paperwork in, otherwise I wouldn't have done that to you." *Id.* At no point did Plaintiff claim the vomiting was due to her son's disability or that she was taking FMLA leave. *Id.* In fact, Plaintiff was with Defendant Travis Justus at a meeting with outside counsel when she received the message from the school nurse, which meant that, according to Plaintiff, Defendant Travis Justus was clear that the incident was not related to the exercise of Plaintiff's rights under the

FMLA.[5] *Id.*

On another undated occasion, Defendant Phillip Justus screamed at Plaintiff for informing him she had a reserved vacation day to take her son to the doctor in a few days, claiming that the request was not on his list. *Id.* ¶ 42. Plaintiff reminded him that he had approved it already, so that it should be on his list, and when they checked the list, the vacation day was on the list as approved in October. *Id.*

In January of 2015, Plaintiff was singled out with a new policy forbidding cell phones on the executive floor, despite the fact that Plaintiff's cell phone was the only way for her to be directly contacted in case of emergency. *Id.* ¶ 43. Plaintiff later discovered that she was the only employee on the executive floor to whom this new policy applied, as the policy contained a clause that exempted every other PBCM executive from it, including her own executive administrative assistant. *Id.*

On January 24, 2015, a member of Defendant PBCM's Board of Directors sent Plaintiff an email that began by stating: "In this male-dominated passive/aggressive company of which I am a part, we need to stop and breathe deep." *Id.* ¶ 44. Plaintiff interpreted this message as mocking her in light of her history of reporting discriminatory and inappropriate behavior by the male staff. *Id.*

In January of 2015, after being promoted to the role of Vice President of Business Development, Matthew Justice began entering Plaintiff's office and demanding the status of documents that were of no consequence to him. *Id.* ¶ 45. He would speak condescendingly and attempt to intimidate her by standing over her stating, "I'm your boss

---

[5] Plaintiff does not further explain this incident or why she alleges it was not related to her rights under the FMLA, despite the fact that she was leaving work in order to care for an ill family member.

and you have to do whatever I say." *Id.* On one occasion, Plaintiff felt physically threatened and attempted to leave the office. *Id.* In response, Matthew Justice moved abruptly to block the doorway and keep Plaintiff from exiting, and in so doing, made physical contact with Plaintiff, causing her fear and humiliation, as well as a belief that she was trapped. *Id.* Plaintiff was left physically shaking and crying after this encounter. *Id.* When Plaintiff reported the incident to Defendant Phillip Justus, she was told (by being yelled at in front of her subordinates and Matthew Justice) that Matthew Justice was an owner of Defendant PBCM and that if he told her to do anything, she had better do it, even if that included getting down on the floor on her hands and knees and assembling furniture if that was what they told her to do, and if she had a problem with that, then she could quit. *Id.* ¶ 46.

In January of 2015, Defendant Phillip Justus asked Plaintiff if there was any man in the company she "didn't have a problem with." *Id.* ¶ 46. Plaintiff answered that she had no problems with anyone who spoke respectfully. *Id.* He responded by saying, "This isn't the right job for you if you don't like being talked to in that way." *Id.* When Plaintiff turned to leave she saw Matthew Justice laughing at her as she walked out of the office. *Id.*

On Sunday, February 1, 2015, Plaintiff sent an email to Defendant Phillip Justus advising him that her son had an anaphylactic allergy attack at church and that she might be late the next day. *Id.* ¶ 48. A few days later, Plaintiff was terminated and given a letter that explained the bases for her termination as follows: (1) the Nebraska license paperwork, which Plaintiff asserts was entirely the fault of Defendant Travis Justus taking the paperwork from Plaintiff's desk "to review;" (2) the failure of Plaintiff to file an answer to a California Labor Commission matter, despite the fact that an answer was not due or

appropriate to file; and (3) the lack of representation at a California Labor hearing, when in fact Plaintiff had confirmed that an employee would be present (an employee who later stated he forgot about it) and Plaintiff was in the hospital with her disabled child on what was clearly FMLA leave. *Id.* ¶¶ 49-50.

As a result of these allegations, Plaintiff asserts three claims, each one against all three Defendants: (1) violations of Title VII based on: (a) disparate treatment on the basis of sex, (b) hostile work environment, and (c) retaliation; (2) FMLA retaliation; and (3) FMLA interference. *Id.* ¶¶ 54-82. Plaintiff seeks damages as a result of these alleged violations. *Id.* ¶¶ 57, 70, 82.

## II. Standard of Review

### A. Fed. R. Civ. P. 12(b)(1)

Subject matter jurisdiction may be challenged by a party or raised sua sponte by the court at any point in the proceeding. *E.g.*, *Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 16-19, (1951); *Harris v. Illinois-California Express, Inc.*, 687 F.2d 1361, 1366 (10th Cir. 1982); Fed. R. Civ. P. 12(h)(3). A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: a facial attack or a factual attack. When reviewing a facial attack on a complaint pursuant to Rule 12(b)(1), the Court accepts the allegations of the complaint as true. *Holt v. United States*, 46 F.2d 1000, 1002 (10th Cir. 1995). When reviewing a factual attack on a complaint supported by affidavits or other documents, the Court makes its own factual findings and need not convert the motion to one brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. *Id.* at 1003.

Rule 12(b)(1) concerns whether the Court has jurisdiction to properly hear the case before it. Dismissal of a federal claim for lack of subject-matter jurisdiction "is proper only

when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974)). Because "federal courts are courts of limited jurisdiction," the Court must have a statutory basis to exercise its jurisdiction. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002); *see* Fed. R. Civ. P. 12(b)(1). Statutes conferring subject-matter jurisdiction on federal courts are to be strictly construed. *F. & S. Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

**B. Fed. R. Civ. P. 12(b)(6)**

Rule 12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[ ] [has] not nudged [his] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (internal quotations and citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). However, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). That said, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests;" the 12(b)(6) standard does not "require that the complaint include all facts necessary to carry the plaintiff's burden." *Khalik*, 671 F.3d at 1192 .

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citation omitted).

## III. Analysis

### A. Title VII

#### 1. Exhaustion of Administrative Remedies

Defendants first assert a number of arguments regarding whether Plaintiff administratively exhausted various parts of her Title VII claim. Exhaustion of administrative remedies "serves the important purposes of 'protecting employers by giving them notice of the discrimination claims being brought against them and providing the EEOC . . . with

an opportunity to conciliate the claims.'" *Wickware v. Manville*, __ F. App'x __, __, No. 15-6028, 2017 WL 167460, at *11 (10th Cir. Jan. 17, 2017) (quoting *Gad v. Kan. State Univ.*, 787 F.3d 1032, 1040 (10th Cir. 2015) (alteration in original) (quoting *Green v. Donahoe*, 760 F.3d 1135, 1140 (10th Cir. 2014)). Exhaustion is therefore "a condition precedent to suit."[6] *Wickware*, 2017 WL 167460, at *11 (citing *Gad*, 787 F.3d at 1034).

**a. Defendants Travis Justus and Phillip Justus**

Plaintiff's Title VII claims must be dismissed with respect to Defendants Travis Justus and Phillip Justus. First, an employment charge filed with the EEOC must be "a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." *Wickware*, 2017 WL 167460, at *12 (quoting 29 C.F.R. § 1601.12(b)). Neither Travis Justus nor Phillip Justus are mentioned by name or otherwise clearly implicated in the EEOC Charge filed by Plaintiff. *See* [#19-1]. Even were the Court to accept Plaintiff's conclusory statements in the Amended Complaint that these two individuals were employers as the term is defined by Title VII, Plaintiff has not demonstrated that she exhausted her administrative remedies with respect to either one. *See Am. Compl.* [#12] ¶¶ 3-4. The EEOC Charge [#19-1] is directed against only Defendant "Professional Bureau of Collections of Maryland, Inc."

Accordingly, Claim One (which encompasses all of Plaintiff's Title VII causes of action) is **dismissed without prejudice** to the extent it is asserted against Defendants

---

[6] The Tenth Circuit Court of Appeals has acknowledged that the previously-settled issue of whether exhaustion of administrative remedies under Title VII is jurisdictional is no longer a settled issue based on recent opinions from the United States Supreme Court. *See, e.g.*, *Wickware*, 2017 WL 167460, at *11 n.4. However, the Circuit has declined to determine the issue where, as here, the defendants have argued the issue of exhaustion independently and there is no need for the Court to decide whether it must raise the issue of exhaustion sua sponte to determine whether it may exercise jurisdiction over the claims. *See id.*

Travis Justus and Phillip Justus, for failure to exhaust administrative remedies. *See Wickware*, 2017 WL 167460, at *11 n.4 (noting that failure to exhaust administrative remedies either implicates subject matter jurisdiction *or* is a condition precedent to suit); *Thompson v. Coulter*, __ F. App'x __, __, No. 16-4042, 2017 WL 765766, at *3 (10th Cir. Feb. 28, 2017) (noting that "a dismissal based on lack of exhaustion should ordinarily be *without* prejudice" (quoting *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1139 (10th Cir. 2005))).

**b. Hostile Work Environment**

Defendant PBCM argues that Plaintiff failed to exhaust her hostile work environment claim. *See Motion* [#19] at 10-11; *Reply* [#30] at 14. In part, Defendant PBCM argues that "Plaintiff, who touts as one of her skills, responding to and drafting EEOC position statements for PBCM, surely understands the elements of a hostile work environment claim[, and y]et she never mentions a hostile work environment or that the environment was so permeated with discriminatory intimidation, ridicule and insult based upon her gender, which was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment or that her work was so substantially effected [sic] that it was intolerable for her to continue." *Reply* [#30] at 13 (internal citation omitted). Defendant PBCM provides no authority, and the Court is aware of none, which holds an individual with Plaintiff's educational and occupational background to a higher standard of pleading in an EEOC charge filed on her own behalf simply because she is an attorney who has some familiarity with this type of work. Rather, as noted above, the standard is simply that she must "describe generally the action or practices complained of." *Wickware*, 2017 WL 167460, at *12 (quoting 29 C.F.R. § 1601.12(b)).

In her EEOC Charge [#19-1], Plaintiff describes "Sex Discrimination" consisting of various examples including "holding [her] to disparate attendance standards because of [her] caregiving responsibilities," "making derogatory sexual comments to and about women and mothers at PBCM, including [her]," "repeatedly subjecting [her] to sexual comments," "telling [her] to smile more," and "comparing femininity to stupidity." Although Plaintiff does not use the phrase "hostile work environment" or any of the "buzz words" connected with such a claim such as "severe" or "pervasive," she complains of sex discrimination and describes events which could be construed as supporting a claim for a hostile work environment (which the Court discusses below in Section III.A.3.). Given that Plaintiff mentions "Sex Discrimination" and that "a plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment," *see Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986), the Court finds that Plaintiff has exhausted her administrative remedies as to this claim.

**c. Retaliation**

Defendant PBCM argues that Plaintiff partly failed to administratively exhaust her Title VII retaliation claim with respect to certain incidents which Plaintiff now attempts to use to support this claim. *Reply* [#30] at 17-18. "[A]dministrative remedies generally must be exhausted as to each discrete instance of discrimination or retaliation." *Wickware*, 2017 WL 167460, at *12 (quoting *Apsley v. Boeing Co.*, 691 F.3d 1184, 1210 (10th Cir. 2012)); *see also Glapion v. Jewell*, __ F. App'x __, __, No. 16-1219, 2016 WL 7228801, at *3 (10th Cir. Dec. 14, 2016) ("[A] Title VII plaintiff [is required] to exhaust administrative remedies for each individual discriminatory or retaliatory act." (quoting *Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003))).

Defendant PBCM argues that three specific incidents are neither explicitly mentioned nor implicitly alluded to in Plaintiff's EEOC Charge, and so they were not exhausted and cannot form a basis for Plaintiff's retaliation claim. *Reply* [#30] at 17-18. The first incident is the January 2015 cell phone policy which allegedly applied only to Plaintiff. *Am. Compl.* [#12] ¶ 43. The second incident is the January 24, 2015 email from a member of PBCM's Board of Directors which Plaintiff interpreted as mocking her history of reporting inappropriate conduct by male staff. *Id.* ¶ 44. The third incident is the January 2015 confrontation between Plaintiff and Matthew Justice, and Defendant Phillip Justice's subsequent publicly demeaning comments directed at Plaintiff. *Id.* ¶¶ 45-47. The Court has reviewed the EEOC Charge [#19-1] and agrees with Defendant PBCM that these three incidents did not form any part of Plaintiff's EEOC Charge, and therefore they are unexhausted and may not be used in support of Plaintiff's Title VII retaliation claim. *See Wickware*, 2017 WL 167460, at *12.

**d. Time Frame of Exhausted Events**

Defendant PBCM argues that Plaintiff's Title VII causes of action must be dismissed to the extent they rely on events occurring before July 2, 2014, because Plaintiff failed to exhaust her administrative remedies as to all events before that date. With respect to Plaintiff's discrimination and retaliation claims, the Court agrees. With respect to the hostile work environment claim, the Court agrees in part because Plaintiff may only rely on events dating back to October 25, 2013, in support of this claim.

The filing of a timely administrative claim is required under Title VII, and a claim is time-barred if not filed within that period. *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1183 (10th Cir. 2003). A charge must be filed "within 300 days after the alleged unlawful

practice occurred." 42 U.S.C. § 2000e–5 (e)(1). A claim not filed within these statutory limits is time-barred. *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 628 (10th Cir. 2012) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002)); *see also Daniels*, 701 F.3d at 631 (stating that *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007), did not overturn the general applicability of *Morgan*). "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Daniels*, 701 F.3d at 628 (quoting *Morgan*, 536 U.S. at 113). The limitations period begins on "the date the employee is notified of an adverse employment decision by the employer." *Daniels*, 701 F.3d at 628 (quoting *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1187 (10th Cir. 2003)).

Plaintiff's EEOC Charge was dated April 28, 2015. [#19-1] at 1. July 2, 2014 is the date three hundred days prior to this filing, and thus any events occurring prior to this date were not timely exhausted. Thus, the Court agrees with Defendants that Plaintiff may not rely on any allegations in her EEOC Charge [#19-1] or Amended Complaint [#12] which occurred before July 2, 2014, with respect to her Title VII causes of action of disparate treatment and retaliation.

A hostile work environment claim does not work in exactly the same way, though. Ongoing, non-discrete discriminatory conduct by an employer, some of which falls before and some of which falls after the limitations cut-off, may sometimes be viewed as a whole under the continuing violation doctrine:

> Under certain circumstances, hostile work environment claims may rely in part on conduct that occurred outside the limitations period. As long as an act contributing to a hostile work environment took place within the limitations period, a court may consider the complete history of acts comprising that hostile work environment. But to consider pre-limitations period conduct, those acts must comprise part of the same actionable hostile work environment practice that continued into the limitations period. A series of

> alleged events comprises the same hostile environment where the pre- and post-limitations period incidents involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers.

*Aman v. Dillon Cos., Inc.*, 645 F. App'x 719, 723-24 (10th Cir. 2016) (internal quotation marks, brackets, and citations omitted) (citing *Duncan v. Manager, Dep't of Safety*, 397 F.3d 1300, 1308 (10th Cir. 2005)).

However, the continuing violation doctrine does not abrogate the need for Plaintiff to exhaust her administrative remedies with respect to all discriminatory actions for which she brings suit. Because a charge of discrimination filed by an employee with the EEOC is intended to give the employer notice of the claim and permit conciliation prior to litigation, courts limit the scope of any Title VII claim to the matters raised in the EEOC charge and the administrative investigation that can reasonably be expected to follow that charge. *MacKenzie v. City & Cty. of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005); *Robinson v. Bd. of Regents of Univ. of Colo.*, 390 F. Supp. 2d 1011, 1017 (D. Colo. 2005). The question in this case therefore is whether the investigation of Plaintiff's Charge could reasonably encompass events occurring prior to July 2, 2014, the cutoff date for Plaintiff's other Title VII claims.

Plaintiff explicitly states in the EEOC Charge [#19-1] that she was subjected to discriminatory and retaliatory actions at work between October 25, 2013, and February 9, 2015. Plaintiff appears to argue that the continuing violation doctrine means that the Court can examine events which occurred throughout her employment with Defendant PBCM in connection with her hostile work environment claim, presumably including events occurring before October 25, 2013. *Response* [#29] at 9. However, to the extent such may be her

argument, Plaintiff confuses the issue of exhaustion with the issue of statute of limitations. *Id.* In short, Plaintiff did not ask the EEOC to investigate anything occurring before October 25, 2013. Plaintiff specified only actions occurring after a specific date, and it would be unreasonable to read the Charge in such a way as to have required the EEOC to investigate any incidents which occurred before that date.

There appears to be no question that at least one act contributing to a hostile work environment took place within the limitations period, i.e., after July 2, 2014. *See Aman*, 645 F. App'x at 723-24. Thus, the Court may consider the complete history of acts comprising that hostile work environment *to the extent exhausted*, i.e., as early as October 25, 2013. *See id.* The Court notes, though, that although Defendant PBCM cannot be held liable for events occurring prior to October 25, 2013, the Court may examine events occurring before that date to the extent that they help create a fuller understanding of events which occurred on or after that date. *See, e.g.*, *Noland v. McAdoo*, 39 F.3d 269, 271-72 (10th Cir. 1994) (stating that events occurring prior to the period for which the employer could be found liable should not be disregarded to the extent they "provide relevant circumstantial evidence to explain the events occurring" during the period for which the employer could be found liable).

Accordingly, the Court limits its review to the scope of the EEOC Charge, i.e., to events occurring between October 25, 2013, and February 9, 2014, with respect to Plaintiff's hostile work environment claim.

**2. Disparate Treatment**

Plaintiff asserts a disparate treatment claim of intentional gender discrimination under Title VII. *Am. Compl.* [#1] ¶¶ 54-58. In *Mormon v. Campbell County Memorial*

*Hospital*, 632 F. App'x 927, 932-35 (10th Cir. 2015), the Tenth Circuit Court of Appeals discussed the standard gender discrimination claims must meet to overcome a motion to dismiss. Although *Mormon* involved a case of gender discrimination under the Fourteenth Amendment, "the elements of a plaintiff's case are the same, based on the disparate treatment elements outlined in *McDonnell Douglas*, whether that case is brought under §§ 1981 or 1983 or Title VII." *Mormon*, 927 F. App'x at 933 n.5 (quoting *Drake v. City of Fort Collins*, 927 F.2d 1156, 1162 (10th Cir. 1991)); *see also, e.g.*, *Mancell v. McHugh*, 639 F. App'x 527, 529 (10th Cir. 2016) (applying *McDonnell Douglas* framework in the context of a Title VII gender discrimination claim).

"To prove an equal-protection claim based on disparate treatment, a plaintiff must provide either direct evidence of discrimination or prevail under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972)." *Mormon*, 927 F. App'x at 933 (citing *Khalik*, 671 F.3d at 1192). "Under *McDonnell Douglas*, the plaintiff must first prove a prima facie case of discrimination." *Id.* "If she does so, then the burden 'shifts to the defendant to produce a legitimate, non-discriminatory reason for the adverse employment action.'" *Mormon*, 927 F. App'x at 933 (quoting *Khali*k, 671 F.3d at 1192). "If the defendant provides such a reason, 'the burden then shifts back to the plaintiff to show that the plaintiff's protected status was a determinative factor in the employment decision or that the employer's explanation is pretext.'" *Id.*

The *Mormon* court next discussed what this framework means in the context of a Rule 12(b)(6) motion to dismiss. *Mormon*, 927 F. App'x at 933. "In *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), the Supreme Court explained that *McDonnell Douglas*'s prima facie case is 'an evidentiary standard, not a pleading requirement.'" *Id.* (quoting

*Swierkiewicz*, 534 U.S. at 510). "As the [Supreme] Court made clear, the standards for employment discrimination set forth in *McDonnell Douglas* simply do not 'apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss.'" *Mormon*, 927 F. App'x at 933 (quoting *Swierkiewicz*, 534 U.S. at 511). "Still, *Twombly* and *Iqbal* require that a plaintiff allege a plausible claim." *Mormon*, 927 F. App'x at 933. The Court "can evaluate [a plaintiff's gender discrimination] claim's plausibility only by considering the prima facie case of discrimination that she would need to prove in court." *Id.* "In pleading a discrimination claim, she need not set forth a prima facie case for discrimination, . . . [b]ut she must allege facts that make such a claim at least plausible." *Id.*

"Thus, to evaluate whether her complaint survives a motion to dismiss, absent direct evidence of discrimination, we examine the first step of the *McDonnell Douglas* framework: the elements [the plaintiff] would need to establish to prove a prima-facie case of gender discrimination." *Id.* (citing *Khalik*, 671 F.3d at 1192). "That is the only way to assess if her claim is, in fact, plausible." *Mormon*, 927 F. App'x at 933. The plaintiff "must have pleaded a plausible claim of gender discrimination to survive dismissal." *Id.* "The inferences offered by the *McDonnell Douglas* framework assist judges in resolving motions to dismiss by providing an analytical framework to sift through the facts alleged." *Id.* (citing *Messina v. Kroblin Transp. Sys., Inc.*, 903 F.2d 1306, 1308 (10th Cir. 1990)). "Although the burden-shifting framework is only an evidentiary standard, we must recognize that 'the *McDonnell Douglas* framework should not be applied in a manner that renders it nothing more than an empty pleading formula, allowing every allegation of employer discrimination to get to a jury.'" *Mormon*, 927 F. App'x at 933-34 (quoting *Zamora v. Elite Logistics, Inc.*,

478 F.3d 1160, 1173 (10th Cir. 2007)).

A prima facie case of gender discrimination in a Title VII case generally requires a plaintiff to show "that she is a member of a protected class, she suffered an adverse employment action, and the challenged action occurred under circumstances giving rise to an inference of discrimination." *Bennett v. Windstream Commc'n, Inc.*, 792 F.3d 1261, 1266 (10th Cir. 2015) (citing *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007)). "While the elements of a prima facie case 'are neither rigid nor mechanistic, their purpose is the establishment of an initial inference of unlawful discrimination warranting a presumption of liability in plaintiff's favor.'" *Bennett*, 792 F.3d at 1266 (citing *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1146 (10th Cir. 2008)).

The first element of a prima facie case of gender discrimination under a Title VII requires a plaintiff to show that "she is a member of a protected class." *Bennett*, 792 F.3d at 1266. Here, Defendants argue that Plaintiff fails to clearly allege which protected class she belongs to. *Reply* [#30] at 11-12. The Court disagrees. Plaintiff clearly alleges throughout the Amended Complaint that she is a woman, *see, e.g.*, [#12] ¶ 10, and also asserts that she was discriminated against on the basis of her sex. *See id.* ¶ 55. Thus, Plaintiff sufficiently alleges the first element.

The second element of a prima facie case of gender discrimination under Title VII requires a plaintiff to show that "she suffered an adverse employment action." *Bennett*, 792 F.3d at 1266. Plaintiff alleges that she was subjected to an adverse employment action in the form of her termination. *Am. Compl.* [#12] ¶ 49. Thus, Plaintiff sufficiently alleges the second element.

The third element of a prima facie case of gender discrimination under Title VII

requires a plaintiff to show that "the challenged action occurred under circumstances giving rise to an inference of discrimination." *Bennett*, 792 F.3d at 1266. Defendants argue that Plaintiff has not sufficiently alleged "circumstances giving rise to an inference of discrimination," because the events on which Plaintiff relies in her Response to demonstrate these "circumstances" all occurred more than 300 days before she filed her EEOC Charge, i.e., before July 2, 2014. *Reply* [#30] at 12. The Court agrees that Plaintiff's Response [#29] inadequately addresses this issue. In her Response, Plaintiff cites only to paragraphs 18-26 of the Amended Complaint [#12]. [#29] at 6-7. Although Plaintiff does not precisely set forth the dates when any of the cited events allegedly occurred, they appear to have occurred between May 2013 and, at the latest, early 2014. *Am. Compl.* [#12] ¶¶ 18-26. There is certainly no clear indication that any event on which she relies *in the Response* occurred within 300 days prior to the filing of her EEOC Charge, and most, if not all, of the events to which she directs the Court's attention appear to have occurred a year or more before.

However, Defendants cite to no authority, and the Court is aware of none, which prevents the Court from examining all of the allegations in a complaint when adjudicating a motion to dismiss. Plaintiff clearly alleges that the reasons provided for her termination (i.e., the failure to file the Nebraska license paperwork, the failure to file an answer in a California Labor Commission matter, and the lack of representation at a California Labor Commission hearing) are untrue and are therefore pretextual. *Am. Compl.* [#12] ¶ 50. Further, among other allegations, Plaintiff asserts that the month before she was fired, Defendant Phillip Justus asked her whether there was an any man in the company with whom Plaintiff did not have a problem, and he further told her at that time: "This isn't the

right job for you if you don't like being talked to in that way." *Id.* ¶ 47. This interaction undeniably describes a situation wherein Plaintiff's employment termination occurred under circumstances giving rise to an inference of gender discrimination. Thus, the Court finds that Plaintiff has provided allegations which demonstrate that her claim is, at a minimum, plausible. *See Mormon*, 927 F. App'x at 933. Thus, the Court finds that Plaintiff has met the minimum pleading threshold for a Title VII claim of disparate treatment.

Accordingly, the Motion [#19] is **denied** to the extent Defendant PBCM seeks dismissal of Plaintiff's Title VII disparate treatment claim.

**3. Hostile Work Environment**

A hostile work environment claim requires a showing that the plaintiff's "workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Williams v. FedEx Corp. Servs.*, __ F.3d __, __, No. 16-4032, 2017 WL 727134, at *4 (10th Cir. Feb. 24, 2017) (quoting *Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1261 (10th Cir. 1998)). "General harassment alone is not actionable." *Williams*, 2017 WL 727134, at *4 (citing *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994)). In evaluating a hostile work environment claim, the Court examines "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Williams*, 2017 WL 727134, at *4 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)).

In her Response, Plaintiff directs the Court's attention to paragraphs 17-22 and 34

of her Amended Complaint [#12] in support of her hostile work environment claim. [#29] at 7. However, paragraphs 17-21 refer to an incident which occurred in May 2013, prior to the start of the period which Plaintiff administratively exhausted, i.e., October 25, 2013. *See supra* § III.1.d. Paragraph 22 is mostly too vague to properly support any claim, stating that Plaintiff "witnessed similar abusive encounters from male managers and executives towards female employees . . . , and multiple incidents of inappropriate sexual innuendo being directed at female employees, including [Plaintiff]." The Court has no way of determining whether the only specific incident mentioned in paragraph 22 ("an incident where Defendant Travis Justus instructed a female employee to 'stop being a pussy'") happened during the period exhausted by Plaintiff, i.e., on or after October 25, 2013. *See* [#19-1]. However, even if the Court assumes, arguendo, that this incident may be properly considered, Plaintiff's hostile work environment claim is still insufficient, given that the only other incident to which Plaintiff directs the Court's attention in support of this claim happened approximately a year or more later, on December 9, 2014. *See Response* [#29] at 7 (citing *Am. Compl.* [#12] ¶ 34). In that incident, Plaintiff alleges that Defendant Travis Justus "advised [her] that it was inappropriate to complain to Human Resources that policies were being unevenly enforced; he then told [Plaintiff] she better 'watch herself,' an event marking the beginning of [Defendant] PBCM's retaliation against [Plaintiff], including sabotaging her and attempting to force her to quit." *Am. Compl.* [#12] ¶ 34.

Because Plaintiff has only directed the Court's attention to two specific incidents (one of which may not have even been properly exhausted), the Court cannot find that she has presented a plausible hostile work environment claim showing that her "workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently

severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Williams*, 2017 WL 727134, at *4. Thus, the Court finds that Plaintiff has failed to meet the minimum pleading threshold for a Title VII claim of hostile work environment. However, the Court will provide Plaintiff with one last opportunity to provide allegations to properly plead this claim, and, thus, the Court will dismiss this claim without prejudice, with leave to amend if Plaintiff so chooses.

Accordingly, Plaintiff's Title VII hostile work environment claim is **dismissed without prejudice** to the extent it is asserted against Defendant PBCM, with leave to amend as ordered below. *See Reynoldson*, 907 F.2d at 127.

**4. Retaliation**

Although Defendant PBCM seeks dismissal of Plaintiff's Title VII retaliation claim, it does not make any cogent argument for the Court to consider, aside from the exhaustion argument already adjudicated above. *See supra* § III.1.c.; *Reply* [#30] at 17-18. Although Defendant PBCM cites to the Amended Complaint [#12] and observes that the allegations appear to relate to Plaintiff's FMLA retaliation claim, the Court cannot infer and create Defendant's argument for it based on these general statements. Accordingly, the Motion [#19] is **denied** to the extent Defendant PBCM seeks dismissal of Plaintiff's Title VII retaliation claim.

**B. FMLA**

The Court first addresses the argument of Defendant Phillip Justus and Defendant Travis Justus that they are not employers as defined by the FMLA. *See Motion* [#19] at 12-13. Although no party provides sufficient argument here, the Court finds, solely for purposes of adjudicating the present Motion [#19], that both individuals are employers as

defined by the FMLA, which states the term "employer" includes "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4). Both individuals served as President and as Board members of PBCM at various times relevant to this litigation, and therefore, as Plaintiff's bosses, clearly acted "in the interest of an employer" to Plaintiff and others who worked for Defendant PBCM. Accordingly, the Court finds this argument to be without merit and turns to the elements of Plaintiff's two FMLA claims.

**1. Interference**

An FMLA-interference claim consists of the following elements: (1) the employee was entitled to FMLA leave; (2) an adverse action taken by the employer interfered with the employee's right to take FMLA leave; and (3) the employer's adverse action "was related to the exercise or attempted exercise of [the employee's] FMLA rights." *Gaige v. SAIA Motor Freight Line, LLC*, __ F. App'x __, __, No. 15-6191, 2016 WL 6958132, at *2 (10th Cir. Nov. 29, 2016) (quoting *Jones v. Denver Pub. Sch.*, 427 F.3d 1315, 1319 (10th Cir. 2005)). At the motion to dismiss phase, however, Plaintiff's pleading burden is only on the first two elements. *See Dalpiaz v. Carbon Cty.*, 760 F.3d 1126, 1132 (10th Cir. 2014). "To satisfy the second element of an interference claim—adverse action interfering with the right to take FMLA leave—the employee must show that she was prevented from taking the full 12 weeks of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave." *Id.* (internal quotation marks and brackets omitted). "Thus, an interference claim arises when an adverse employment decision is made before the employee has been allowed to take FMLA leave or while the employee is still on FMLA leave." *Id.*

Here, Plaintiff has provided no allegations that "she was prevented from taking the full 12 weeks of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave." *Id.* In the absence of such allegations, her FMLA-interference claim cannot withstand Defendants' Motion [#30]. However, given the lack of clarity about the timing of various events around the time Plaintiff sought FMLA eligibility, the Court will provide Plaintiff with one last opportunity to provide allegations to properly plead this claim, and, thus, the Court will dismiss this claim without prejudice, with leave to amend if Plaintiff so chooses. Accordingly, Plaintiff's Claim Three, i.e., FMLA-interference claim, is **dismissed without prejudice**, with leave to amend as ordered below. *See Reynoldson*, 907 F.2d at 127.

**2. Retaliation**

A prima facie case of FMLA retaliation requires allegations that "(1) [the plaintiff] engaged in a protected activity; (2) [the defendant] took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action." *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1318 (10th Cir. 2017) (quoting *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170-71 (10th Cir. 2006)). Thus, a FMLA-retaliation claim is similar to a FMLA-interference claim, except, "[i]n contrast, a retaliation claim may be brought when the employee successfully took FMLA leave, was restored to her prior employment status, and was adversely affected by an employment action based on incidents post-dating her return to work." *Dalpiaz*, 760 F.3d at 1132 n.3.

Defendants do not appear to dispute at this time that Plaintiff engaged in protected activity by exercising her rights under the FMLA. *See Reply* [#30] at 19-20. They argue

instead that it is impossible for them to discern which allegations pertain to which Defendants. *See id.* With respect to the individual Defendants, the Court agrees. Given the lack of clarity in the Amended Complaint regarding when Plaintiff took allegedly proper FMLA leave to care for her son, *see* [#12] ¶ 50(c), the Court cannot find that Plaintiff has adequately alleged any specific retaliation by either Defendant Phillip Justus or Defendant Travis Justus. However, Plaintiff does sufficiently allege that she took FMLA leave to care for her son, and that she was subsequently terminated soon after. *Id.* ¶ 50. Thus, although it is unclear whether any individual Defendant had a direct hand in Plaintiff's termination, it is clear from her allegations that Defendant PBCM terminated her employment.

The Court will provide Plaintiff with one last opportunity to provide allegations to properly plead this claim as to Defendant Travis Justus and Defendant Phillip Justus, and, thus, the Court will dismiss this claim as to those two Defendants without prejudice, with leave to amend if Plaintiff so chooses. Accordingly, Plaintiff's Claim Two, i.e., FMLA-retaliation claim, is **dismissed without prejudice**, with leave to amend as ordered below, as to Defendant Travis Justus and Defendant Phillip Justus. *See Reynoldson*, 907 F.2d at 127. The Motion [#19] is **denied** as to Claim Two with respect to Defendant PBCM.

## IV. Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the Motion [#19] is **GRANTED in part and DENIED in part**. The Motion is **granted** to the extent that Claim One (Title VII: disparate treatment, hostile work environment, and retaliation) is **dismissed without prejudice** as to Defendant Phillip Justus and Defendant Travis Justus. The Motion is further **granted** to the extent that the Court will not consider any unexhausted portions of Plaintiff's Title VII claims in its

adjudication of the merits of such claims, insofar as Claim One is asserted against Defendant PBCM. The Motion is further **granted** to the extent that Claim One (Title VII: hostile work environment) is **dismissed without prejudice** as to Defendant PBCM. The Motion is further **granted** to the extent that Claim Three (FMLA: interference) is **dismissed without prejudice** as to all three Defendants. The Motion is further **granted** to the extent that Claim Two (FMLA: retaliation) is **dismissed without prejudice** as to Defendant Travis Justus and Defendant Phillip Justus. The Motion is **denied** in all other respects.[7]

IT IS FURTHER **ORDERED** that Plaintiff may, if she so chooses, file a Second Amended Complaint which addresses her claims to the extent non-exhaustion-related deficiencies are identified in this Order. Plaintiff need not file a motion with a Second Amended Complaint, and any such Second Amended Complaint shall be filed **on or before April 3, 2017**. If Plaintiff files a Second Amended Complaint, Defendants shall answer or otherwise respond in accordance with the Federal Rules of Civil Procedure.

Dated: March 17, 2017

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge

[7] Thus, if Plaintiff chooses not to file a Second Amended Complaint, the remaining claims will be Claim One (Title VII: disparate treatment and retaliation), and Claim Two (FMLA: retaliation), both against only Defendant PBCM.