**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:16-cv-01550-KLM

ROBYN D. ROSS,

     Plaintiff,

     v.

PROFESSIONAL BUREAU OF COLLECTIONS OF MARYLAND, INC.;
PHILLIP JUSTUS; and,
TRAVIS JUSTUS

     Defendant.

---

## RESPONSE TO MOTION TO DISMISS [DOC. 43]

---

Plaintiff Robyn D. Ross, through her undersigned counsel, herby submits her Response to Defendants' Motion to Dismiss (Doc. 43), and as grounds therefore states as follows:

### INTRODUCTION AND BACKGROUND

Plaintiff Robyn D. Ross is the mother of two young children with serious health conditions. Ms. Ross's son has potentially deadly, anaphylactic nut and peanut allergies while her daughter had blindness in one eye which required special ophthalmological treatment. Ms. Ross was hired as General Counsel of Defendant Professional Bureau of Collections of Maryland, Inc. ("PBCM") on March 29, 2013. During her employment with Defendant, Ms. Ross recalls only missing one day of work due to illness, and only rarely took parts of days off to care for her children. Ms. Ross met all job- performance goals,

resulting in cost savings and reduced risk for Defendant PBCM.   At the outset, Defendant PCBM was accommodating to Ms. Ross's familial needs and allowed her some flexibility in her schedule to deal with those issues.

Soon after her employment commenced, Ms. Ross observed, and became concerned about, the way in which male managers, executives, officers and owners of PBCM treated female employees.   Such instances included yelling, cursing, and sexual innuendo.   When Ms. Ross raised those issues with her superiors, and in particular Defendants Phillip Justus and Travis Justus, rather than work with their General Counsel to address the issues, Ms. Ross was discouraged from pursuing the issues by yelling at and bullying Ms. Ross and making her the subject of sarcastic and derogatory jokes.

After Ms. Ross tried to address the issues with treatment of female employees, PCBM and other Defendants began making it difficult for Ms. Ross to adjust her schedule to meet her familial needs.   In or about January of 2015, Ms. Ross filed for ongoing intermittent family leave time under the Family Medical Leave Act ("FMLA") so that she could take time away from her work to deal with her children's medical needs.   Defendant Travis Justus and the PBCM tried to discourage Ms. Ross from filing her FMLA paperwork.   Soon after Ms. Ross filed the paperwork, PBCM and Travis Justice began subjecting Ms. Ross to intense levels of scrutiny, sabotaging her job performance, and trying to humiliate her by having her do tasks that were well below her job position and ability.   PBCM and Travis Justus also began subjecting Ms. Ross to intense scrutiny for time away from the office, docking her vacation time in situations other employees would not be docked, and physically intimidating Ms. Ross.

This course of events culminated on Sunday, February 1, 2015 when Ms. Ross sent an e-mail to Defendant Phillip Justus advising him that she would be late because of dealing with her son's severe allergy attack.  A few days later, Ms. Ross was terminated and given a letter citing three reasons for her termination.   None of the reasons given for Ms. Ross's termination were factually accurate and as such were a pretext for the true reasons for the termination of Ms. Ross which was retaliation her efforts to address the widespread issues with sexual harassment and disparate treatment of female employees and her use of FMLA time to care for her family.

Based on these factual circumstances, Ms. Ross asserts three claims for relief:

First Claim for Relief - Title VII = Civil Rights Act of 1964 and 1991.

Second Claim for Relief - Retaliation under the FMLA.

Third Claim for Relief - Interference under the FMLA.

## STANDARDS ON MOTION TO DISMISS

The Federal Rules of Civil Procedure provide that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). "The Court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F. 3d 1194, 1201 (10th Cir.2003) (citations and quotation marks omitted).   "A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir.1991).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* That said, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the... claim is and the grounds upon which it rests;" the 12(b)(6) standard does not "require that the complaint include all facts necessary to carry the plaintiff's burden." *Khalik*, 671 F.3d at 1192.

## ARGUMENT

### A.  Defendant is attempting to dismiss claims that were already dismissed by the Court.

On March 17, 2017 this Court dismissed the Title VII claims against Travis and Phillip Justus and ruled that Ms. Ross's disparate treatment and retaliation claims are limited to events and acts occurring from October 25, 2013 through February 9, 2015.  Those claims are dismissed and should not be subject to a motion to dismiss.  The Amended Complaint is clear that the Title VII claims are not brought against Travis or Phillip Justus.   Amended Complaint at p. 16.

### B.  Ms. Ross states a claim for Title VII retaliation.

In order for Ms. Ross to state a prima facie claim for retaliation, she need only make allegations of a causal connection between her protected opposition and the materially adverse action to which she was subjected. *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011) (Section 1981); *Daniels*, 701 F.3d at 638 (Title VII). "Protected

opposition can range from filing formal charges to ***voicing informal complaints to superiors***." *Fye v. Oklahoma Corp. Commission*, 516 F.3d 1217, 1218 (10th Cir. 2008), emphasis supplied, citing *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004). "Although no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by [the statute]." *Hinds v. Sprint/United Management Co.*, 523 F.3d 1187, 1202-1203 (10th Cir. 2008.) Ms. Ross "need only show that when [she] engaged in protected opposition, [she] had a reasonable good-faith belief that the opposed behavior was discriminatory." *Hertz* at 1015; *Crumpacker v. Kansas Dep't of Human Res.*, 338 F.3d 1163, 1172 (10th Cir. 2003). The good-faith belief must be objectively and subjectively reasonable. *Little v. United Tech., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir.1997)(explaining that a plaintiff must show "[her] belief was objectively reasonable in light of the facts and record presented"); *Espinoza v. Dept. of Corrs.*, 509 Fed.Appx. 724, 725 (10th Cir. 2013) (unpublished)(good-faith reasonable belief standard has "subjective and objective components").

Here, Ms. Ross alleges a pattern and practice of discrimination she observed almost immediately upon being employed. Although not actionable as a claim for relief, it is relevant background that in May of 2013, Ms. Ross witnessed a female employee being publicly berated and humiliated by Eric Brechbill, Vice President of Operations. Amended Complaint at ¶ 18. Ms. Ross informed Mr. Brechbill that his behavior was unacceptable, and brought the conduct to the attention of president Travis Justus.  Complaint at ¶¶ 20 - 21.  Mr. Justus was uninterested and did not address that behavior.  *Id.* at ¶ 21.  This incident came up

again after Ms. Ross sent an e-Mail to Travis Justus on October 25, 2013 saying that she felt she was being treated unfairly because she is a female; Travis Justus responded that Ms. Ross's concerns are "bullshit" and that Ms. Ross was "pissing him off". *Id.* at ¶ 24(h). The incident came up again in March of 2014 when Travis Justus told Ms. Ross he agreed with Mr. Brechbill's assessment that Ms. Ross was an "untrustworthy employee" and "not sufficiently dedicated", based on that incident. *Id.* at 24(i). On May 6, 2014, Travis Justus told Ms. Ross "I know you're not stupid, you're just so feminine." *Id.* at ¶ 24(j). On May 7, 2014 Ms. Ross attempted to file a complaint with Ross Ray, director of human resources, regarding the hostile work environment for female employees and Mr. Ray walked out without taking the complaint, leaving her sitting in his office. *Id.* at ¶ 24(k). Ms. Ross continued to attempt to report other violations of sexual harassment laws and company policy to Mr. Ray, and each time he would refuse to take the report and walk out on Ms. Ross; when Ms. Ross asked Travis Justus to address issues of workplace sexual harassment, he would become angry with her and refuse to act. *Id.* at 27. On December 9, 2014 Ms. Ross again informed Mr. Ray that she "felt targeted by the male executives and management due to being a woman and mother", Mr. Ross responded by writing a memo describing Ms. Ross as having "gone on a tirade." *Id.* at ¶ 33. Mr. Travis responded to that complaint by informing Ms. Ross that it was inappropriate to complain to human resources about such issues, and told Ms. Ross to "watch herself". *Id. at* ¶ 34. On January 24, 2015, a member of PBCM's board of directors ridiculed Ms. Ross's complaints about sexual harassment by writing sarcastically and derisively about "this male-dominated passive-aggressive company of which I am a part." *Id*. at ¶ 44. Ms. Ross describes how in January of 2015, Matthew

Justus physically intimidated and taunted her, telling her, "I'm your boss and you have to do whatever I say"; when Ms. Ross informed Phillip Justus of this, his response was that her job was to get on the floor "on her hands and knees" and assemble furniture, if that's what PBCM wanted its general counsel to do. *Id.* At ¶ 45. Ms. Ross was also asked by Phillip Justus that month if there was "any man in the company she did not have a problem with" and informed her that "this isn't the right job for you if you don't like being talked to in that way." *Id.* at ¶ 47.

Given the outright hostility of the male executives each time Ms. Ross asked them to address issues of workplace sexual harassment, it is certainly plausible that the actions that PCBM took against Ms. Ross - and no one else - were retaliation for her attempts to address those issues with her superiors. Indeed, Travis Justus and Mr. Ray explicitly told Ms. Ross that due to her complaints to her supervisor about the harassment, they had branded her an "untrustworthy employee" and "not sufficiently dedicated" to the company. Clearly here, Ms. Ross has stated a plausible claim for relief for retaliation under Title VII and the motion should be denied.

**C.     Ms. Ross states a plausible claim for relief for hostile work environment under Title VII.**

"The elements of a hostile work environment claim are: (1) the plaintiff is a member of a protected group; (2) the plaintiff was subjected to unwelcome harassment; (3) the harassment was based on the protected characteristic...; and, (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of the plaintiff's employment and created an abusive working environment." *Asebedo v. Kan. State. Univ.*,

559 F.Appx. 668, 670 (10th Cir. 2014) (citation omitted). The Court should view the objective severity of the harassment from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Harsco Corp. v. Renner*, 475 F.3d 1179, 1187 (10th Cir. 2007) (emphasis added). In other words, it must look to a "totality of the circumstances, " and "consider[ ] such factors as 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Chavez v. New Mexico*, 397 F.3d 826, 832-33 (10th Cir. 2005) (quoting *O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1098 (10th Cir. 1999)); accord *Billings v. Town of Grafton*, 515 F.3d 39, 48 (1st Cir. 2008).   Ongoing conduct may be viewed as a whole under the continuing violation doctrine:

> Under certain circumstances, hostile work environment claims may rely in part on conduct that occurred outside the limitations period. As long as an act contributing to a hostile work environment took place within the limitations period, a court may consider the complete history of acts comprising that hostile work environment. But to consider pre-limitations period conduct, those acts must comprise part of the same actionable hostile work environment practice that continued into the limitations period. A series of alleged events comprises the same hostile environment where the pre- and post-limitations period incidents involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers.

*Aman v. Dillon Cos., Inc.*, 645 F. App'x 719, 723-24 (10th Cir. 2016) (internal quotation marks, brackets, and citations omitted) (citing *Duncan v. Manager, Dep't of Safety*, 397 F.3d 1300, 1308 (10th Cir. 2005)). In this case, the Court has found that incidents after October 13, 2013 may be considered under the continuing violation doctrine and that events

occurring before that date may be considered to the extent they "help create a fuller understanding of events which occurred on or after that date." Order (Doc. 37) at p. 19.

Here, Ms. Ross's entire complaint describes a work environment that was beyond hostile - more accurately horrific - for female employees. Ms. Ross describes actions such as telling female employees to "stop being a pussy" when they complained about their treatment, referring to female employees as "frigid" and instructing them to smile more, making references to female employees' body types and dress, making sexual references to female employees about semen and penis injections, criticizing women for being too "feminine", and using "feminine" as a synonym for "stupid", male executives making unwanted sexual advances toward female subordinates, and a description of one executive rubbing his genitals through his pants when speaking to female employees.

More specifically, Ms. Ross alleges that the first incident in which she noticed the hostility to female employees was in May of 2013, when she attempted to bring an instance that troubled her to the attention of Travis Justus, and Mr. Justus was simply disinterested. Complaint at ¶¶ 18 - 21. Ms. Ross also describes other incidents where she was told repeatedly to "smile more" by Travis Justus. *Id.* at ¶ 24(a). In front of staff, Travis Justus referred to Ms. Ross as being "not fat, but a good sized woman" *Id.* at ¶ 24(b). Travis Justus made a reference to semen or oral sex by joking with Ms. Ross in a discussion about food "you know what else is high in protein." *Id.* At ¶ 24(c). After Ms. Ross tore her pants falling on ice outside the office Travis Justus told her, "good, I never liked pants on you in the first place" *Id.* at ¶ 24(d). Travis Justus would loudly and publicly discuss sexual enhancement procedures he was undergoing *Id.* at ¶ 24(e). On May 6, 2014, Travis Justus told Ms. Ross,

"I know you're not stupid, you're just so feminine" *Id.* at ¶ 24(f) & (j).   When Ms. Ross raised concerns about sexual harassment, Travis Jusus told her that her concerns were "bullshit" and that she was "pissing [him] off" by raising them. *Id.* at ¶ 24(h). Indeed, it was Ms. Ross's raising of issues about sexual harassment that led to a determination by management that Ms. Ross was an "untrustworthy employee" and "not sufficiently dedicated to the company" *Id.* at ¶ 24(i). Ms. Ross alleges she was subjected almost daily to yelling, cursing, sexual innuendo and comments indicating that women were in an inferior position at PBCM by virtue of their gender *Id.* at ¶ 56. Ms. Ross also describes incidents she observed to other female employees as well, including unwanted sexual advances *Id.* at ¶ 25. Defendant Phillip Justus would rub his genitals while talking to female employees. *Id.* at ¶ 26. To make matters worse, Ms. Ross was repeatedly ignored, treated rudely, and ridiculed when she tried to file complaints with the director of human resources or the president of the company. *Id.* at ¶ 24(k), 33, 34, 44

Clearly these facts demonstrate a "workplace [that] is permeated with discriminatory intimidation ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victims employment and create an abusive working environment." *Davis v. U.S. Postal Serv.,* 142 F.3d 1334, 1341 (10th Cir. 1998)(quotations omitted).

Defendant's motion relies on ignoring all these allegations, and Defendant contends it cannot find any allegations that establish a hostile work environment. Indeed, that Defendant does not recognize this behavior as creating a hostile work environment for its female employees is the problem. Defendant appears to rely on a typographical error in the Amended Complaint in paragraph 56 in which Ms. Ross intended to set forth specific

paragraph numbers.   However, the typographical error does not make the allegations in the Complaint disappear.   Indeed, to the extent Defendant cannot formulate an answer, Defendant's motion is more properly stated as one for a more definite statement under Fed. R. Civ. P. 12(e).   Ms. Ross responds by stating the allegations concerning hostile work environment appear in paragraphs 18 - 21, 24, 26, 33, 34, and 44.   Ms. Ross's motion to dismiss should be denied.

**D.      Ms. Ross states a plausible claim for relief for retaliation under the FMLA.**

A claim for FMLA retaliation requires allegations that "(1) [the plaintiff] engaged in a protected activity; (2) [the defendant] took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action." *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1318 (10th Cir. 2017) (quoting *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170-71 (10th Cir. 2006)). A FMLA retaliation claim differs from an interference claim because an employee need not be denied or dissuaded from taking leave, rather "a retaliation claim may be brought when the employee successfully took FMLA leave, was restored to her prior employment status, andwas adversely affected by an employment action based on incidents post-dating her return to work." *Dalpiaz*, 760 F.3d at 1132 n.3.

Here, the retaliation against Ms. Ross was explicit and clear.   In its motion to dismiss, the Court found that Ms. Ross adequately stated a claim for relief against defendant PCBM - she was fired in retaliation for not only taking leave, but for filing the FMLA paperwork. The Court ruled that the allegations with regard to Travis and Phillip Justus were unclear.   Order (Doc. 37) at p. 29.   Ms. Ross has alleged that defendants Phillip and Travis Justus were

president and members of the board of PBCM.   Complaint at ¶¶ 3 & 4.   Defendant Travis Justus tried to discourage Ms. Ross from filing FMLA paperwork.   Complaint at ¶ 32.   Travis Justus told Ms. Ross to "watch herself" after she filed FMLA paperwork.   Complaint at ¶ 35. Defendant Phillip Justus directed the system administrator to access Ms. Ross computer to print messages.   Complaint at ¶ 40. Phillip Justus docked Ms. Ross's pay because she filed FMLA paperwork, and Phillip told Ms. Ross "You're the one that turned that paperwork in, otherwise I wouldn't have docked you.   In their role as president and members of the board, and given their explicit threats and actions, it is proper at the pleading stage to infer in favor of the non-moving party that Phillip Justus and Travis Justus had a role in Ms. Ross's termination.   Accordingly, Ms. Ross has stated a claim for relief for retaliation against all defendants under the FMLA and the motion should be denied.

**E.**     **Ms. Ross states a plausible claim for relief for interference under the FMLA**

In order for Ms. Ross to state a claim for interference under the FMLA, she must allege only that "(1) she was entitled to take FMLA leave, (2) that some adverse action by the employer interfered with her right to take that leave, and (3) that the employer's action was related to the exercise or attempted exercise of her FMLA rights."   *Dalpiaz v. Carbon County, Utah*, 760 F.3d 1126, 1132 (10th Cir. 2014).

Here, Ms. Ross's claim for interference are predicated on allegations demonstrating that Defendants discouraged her from taking FMLA time.   Defendant Travis Justus expressly tried to discourage Ms. Ross from filing FMLA paperwork.   Complaint at ¶ 32.   After she filed the paperwork, Travis Justus told Ms. Ross to "watch herself". Complaint at ¶ 35. Defendant Phillip Justus directed the system administrator to access Ms. Ross computer.

12

Complaint at ¶ 40. Phillip Justus docked Ms. Ross's pay because she filed FMLA paperwork, and Phillip told Ms. Ross "You're the one that turned that paperwork in, otherwise I wouldn't have docked you." Accordingly, the motion to dismiss should be denied.

**F.      Defendants' request for attorney fees is improper.**

Defendant's include in their motion a motion for attorney fees but do not point to any rule, statute, contract or any other authority on which they base their claim.      Motions must include with particularity the grounds for the motion.  Fed. R. Civ. P. 7.  D.C.COLO.LCivR 7.1(e) requires citation to authority in a motion.  Fed. R. Civ. P. 7.1(d) prohibits combining motions in a single document.  Plaintiff cannot formulate a response without knowing what rule, statute, contract or other authority Defendant is asserting entitles them to such relief. Accordingly, Defendants' motion for fees should be denied.

WHEREFORE, Ms. Ross respectfully requests the Court deny Defendants Motion to Dismiss or, in the alternative, that any claims which are found to be defectively pled be dismissed without prejudice and with leave to amend.

Dated this 11th day of May, 2017.

COAKLEYKROL, LLC

*s/ Eric R. Coakley*

_____

Eric R. Coakley, CO Bar No. 34238
2373 Central Park Blvd. - Suite 100
Denver, CO 80238
(303)803-1611
coakley@coakleykrol.com

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 11, 2017, I filed a copy of the foregoing Response to Motion to Dismiss via the Courts CM/ECF system and at the same time requested an electronic copy be served on the following:

Kristi L. Blumhardt
McElroy, Deutsch, Mulvany & Carpenter LLP
5600 S. Quebec St. - Suite C100
Greenwood Village, CO 80111
kblumhardt@mdmc-law.com

s/ Eric R. Coakley

_____

Eric R. Coakley