## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.  1:16-cv-01550-KLM

ROBYN D. ROSS, an individual,

      Plaintiff,

v.

PROFESSIONAL BUREAU OF COLLECTIONS OF MARYLAND, INC., a
Maryland corporation,
PHILLIP JUSTUS, an individual; and
TRAVIS JUSTUS, an individual,

      Defendants.

## DEFENDANT PBCM'S SUPPLEMENTAL RESPONSES TO PLAINTIFF'S
## FIRST SET OF COMBINED DISCOVERY REQUESTS

Defendants Professional Bureau of Collections of Maryland, Inc. ("PBCM" or "Defendant") by and through its counsel, McElroy, Deutsch, Mulvaney & Carpenter, LLP, submit their Supplemental Responses to Plaintiff's First Set of Combined Discovery Requests as follows:

### INTERROGATORIES

PBCM incorporates its General Objections in full as set forth in its Responses to Plaintiff's First Set of Combined Discovery Requests, as though fully set forth herein.

EXHIBIT D

**Interrogatory No. 1**.

Identify each and every person who assisted You in preparing answers to these interrogatories and the included responses to the requests for production and requests for admission.

**Answer:**

Objection. This Interrogatory seeks information that is protected by the attorney-client and work product privileges. Subject to and without waiving these objections, outside of PBCM's counsel, Linda Brown.

**Supplemental Answer:** Ms. Brown is an executive with PBCM and thus may be reached through undersigned counsel.

**Interrogatory No. 2**.

Please provide an organizational chart for PBCM showing all managers, executives, officers and the like and their supervisory responsibilities. In doing so, please Identify the specific individuals who held positions in Ms. Ross's chain of command at the time of the allegations in the Complaint.

**Answer:**

Objection. This Interrogatory is overbroad to the extent it lacks time parameters and to the extent it seeks information outside of the applicable statute of limitations period. Subject to and without waiving its objections, see the attached organizational charts for PBCM.

**Supplemental Answer:** The organizational charts are marked PBCM 00001-02, and were previously provided on December 2, 2017.

EXHIBIT D

**Interrogatory No. 3**.

Do you contend there was any non-discriminatory basis for terminating Ms. Ross? If so, please Identify each such incident giving the date of each incident, individuals who have knowledge concerning the incident, the specific policy, rule, or duty you contend Ms. Ross's conduct violated, and any documents that support your contentions.

**Answer:**

Objection.   Contention interrogatories at this stage are premature, particularly since PBCM has not yet filed an Answer in this matter due to the pending Motion to Dismiss the Amended Complaint and thus has not formulated its defenses as Plaintiff's actionable claims, if any.   PBCM has not yet contended anything in this matter.   Additionally, parties are generally not required to respond to contention interrogatories until the discovery process is near its end. PBCM will supplement its Answer to this Interrogatory, if necessary.    Subject to and without waiving PBCM's objections, it states that it had multiple non-discriminatory reasons for terminating Ms. Ross.   See PBCM's November 20, 2015 Letter to the EEOC for an explanation of the same.

**Supplemental Answer:**

Plaintiff's employment was terminated due to her poor job performance, insubordination, and failure to comply with Company policy including in regards to her frequent absenteeism, wholly unrelated to her son's alleged peanut allergy. Indeed, PBCM made numerous

accommodations for Plaintiff, including exempting her from aspects of the cellphone policy that was implemented due to the sensitive nature of information PBCM processed, overlooking performance issues that should have resulted in termination much sooner, and permitting her significant amounts of leave on little or no notice. During her employment, Plaintiff did not complain that she was being discriminated against or was experiencing a work environment that was hostile because of her gender, pursuant to PBCM's policies.

Plaintiff is a vocal opponent of vaccinations. She boasts about the "enemies" she has made in the "pro-vaccine" camp. At one point, Plaintiff apparently felt she was being "attacked" online by an individual. She admittedly abused her position with the Company to pressure a coworker to access the individual's private credit information using PBCM's restricted access, reviewed the information, and improperly (and likely in violation of law) utilized the information to "get back" at the individual, publicizing sensitive and confidential information. The individual complained to PBCM about the unauthorized and improper access and conduct of Plaintiff, threatening legal action. Although this was a terminable offense, PBCM elected to allow Plaintiff to retain her job, and instead verbally counseled her about this issue.

Similarly, in September 2014, Plaintiff used Company resources in violation of policy to respond to an acquaintance who inquired about her:

> Good morning! I got banned from facebook for having a fake name. So I changed it to a different fake name and got banned again. This time they want a gov't ID to turn it back on. So I started a new profile but within a week I had a stalker from the pro-vaccine community (I don't mean people who believe in vaccines - these are people who believe you should lose your job for speaking out about the dangers of vaccines) so I shut it down and started a 3rd profile. Look for me under the name Skye Tormenta if

4

you want. ***Now I've commenced operation Troll the Troll because you do not fuck with the general counsel of a collection agency. No one can stalk like my people can stalk . . . .***

This conduct was in clear violation of Operations Procedure #P-3 regarding "Privacy, Confidentiality and Non-Disclosure," which prohibits (among other things) using or attempting to use consumer information in any way not directly related to the business of the Company. Another Company policy acknowledged by Plaintiff prohibits accessing personal social media accounts from Company computers, and from disclosing consumer data on social media. Nevertheless, Plaintiff was constantly checking and posting to social media accounts and blog(s) while at work and while using company owned computers.  She would send outside counsel and PBCM employees' emails regarding nutrition, vaccines, and the like during company time, using company owned computers.  She participated in interviews related to non-PBCM work issues, during PBCM business hours from PBCM's office.   PBCM also learned, after Plaintiff's termination, that she was apparently working for other clients while at PBCM's offices, during PBCM office hours, using PBCM equipment.  PBCM also learned, through the allegations in her Complaint, that Plaintiff illegally accessed Phillip Justus' personnel file.

As General Counsel, and as touted by Plaintiff on her LinkedIn profile online, she was responsible for renewing all corporate state and city business licenses. However, she failed to do so. In one instance, she admittedly failed timely to submit license renewal documentation to the State of Nebraska. This led to PBCM's loss of its licensure in Nebraska effective December 31, 2014, forcing it to suspend all operations within the entire state, resulting in tens of thousands of dollars in losses to the Company. Rather than going through the simple and inexpensive process

of renewal, PBCM was required to commence the licensure application process from the beginning, which is more time-consuming and costly. Moreover, most licensure applications required PBCM identify prior license revocations and the reason therefor. PBCM now is required to report the Nebraska license revocation on licensure applications not only in Nebraska, but in other jurisdictions as well, and must explain the revocation in order to prevent an adverse impact on such licensure.

Plaintiff held herself out as an experienced attorney, touting her years of courtroom experience, negotiation and counseling skills, and "smart business judgment." Those purported skills were not evident in her work for PBCM.

For instance, in one case, a prior employee filed a wage complaint with the Labor Commissioner of the State of California. PBCM has strong defenses to the claim, and could easily have prevailed on the merits. Plaintiff failed to file any answer or other response to the wage claim. Moreover, Plaintiff failed to appear at the hearing, either live or telephonically, and failed to ensure that a Company representative was in attendance. Because of PBCM's failure to respond and/or enter any appearance, a default award in the amount of nearly $7,000 was entered Plaintiff failed to bring this default to the attention of Philip Justus.  The local manager had to forward the information to Mr. Justus.

Similarly Plaintiff failed timely to address a pending matter and negotiate a settlement, resulting in tens of thousands of dollars in unnecessary legal fees and additional costs to resolve the matter.

6

EXHIBIT D

Because of the nature of PBCM's collections business, its heavy reliance on legal counsel to address regulatory and other issues, it is critical that PBCM's in-house counsel be readily available and on-site as much as possible during business hours. And due to the highly sensitive nature of the information it processes, PBCM does not provide remote access to employees, including the General Counsel. The job requirement of regular attendance during scheduled business hours was emphasized with Plaintiff from the outset.

Plaintiff was told on numerous occasions that she needed to notify the Human Resources Department regarding anticipated missed work time. She was expressly told that last-minute texts and emails to Philip Justus and/or Travis Justus were not acceptable. Under PBCM policy, employees who fail to properly report their tardiness or absenteeism are subject to disciplinary action, which may result in termination. Plaintiff was repeatedly counseled that she needed to (i) provide advance notice of her absences/tardiness whenever possible, and (ii) contact Human Resources directly about such absences/tardiness. She repeatedly ignored these directives. Coming from an environment where she had been her own boss, Plaintiff clearly chafed under these requirements.

Plaintiff was repeatedly and unapologetically late for work, missed work altogether and/or took extra time off for a multitude of reasons, without seeking advance approval and without providing appropriate notice under the Company policy. Plaintiff expressly indicated that she resented the fact that she was expected to report in to Human Resources, whose representative she viewed as her "subordinate."

EXHIBIT D

As noted above, Plaintiff's regular working hours were designated as 8 a.m. through 5 p.m. However, she began having attendance issues immediately after joining the Company. Specific instances of the attendance issues are detailed in PBCM's Answer to Interrogatory No. 10.   PBCM attempted to work with Plaintiff to end her attendance issues.  For example, on October 28, 2013, PBCM permitted Plaintiff to modify her scheduled hours to 8:30 a.m. to 4.30 p.m in order to better accommodate her schedule and in an effort to permit her to report to work on time. It did not help. Within approximately two weeks, on November 15, 2013, Plaintiff was late again, with no explanation and no notice provided.  In late November 2014, Plaintiff requested that her hours be temporarily changed back to 8 a.m. - 4 p.m. due to nanny scheduling issues; PBCM accommodated this request notwithstanding that Plaintiff was having difficulty getting in even at a later hour.  Plaintiff took to emailing and/or texting Company President Phillip Justus directly. Plaintiff arrived late for, and/or left early from, meetings with outside legal counsel. For instance, on December 11, 2014, Plaintiff and Mr. Justus were meeting with outside legal counsel. Shortly after the meeting started, Plaintiff abruptly departed to pick her child up from school.

Although she was repeatedly counseled about compliance with Company policy regarding the absences, Plaintiff was simply unwilling to comply. She expressed that as a "high-level executive," she should not be required to follow Company policies, and she did not want to report to an employee, Mr. Ray, whom she considered to be her subordinate. So far as PBCM could tell, Plaintiff did not typically put in additional hours to make up for the time she was

8

missing for all of her personal issues. These frequent and unpredictable absences adversely impacted PBCM's business.

In response to a counseling she received, Plaintiff made reference to her son's peanut allergy, which she claimed was a disability, and stated that some of her absences related to this alleged disability. Plaintiff was promptly provided with Family and Medical Leave Act ("FMLA") paperwork to permit the Company to track protected leave and ensure that no adverse action was taken against Plaintiff with respect thereto. On Sunday, December 7, 2014, Plaintiff emailed Company President Phillip Justus to advise him that her nanny was ill and she would be adjusting her hours and leaving early the following day (December 8). On December 9, 2014, Plaintiff was tardy again, this time due to a nanny illness and her son's croup. She emailed Phillip Justus, who instructed her to notify Russell Ray, the Human Resources Director, per Company policy. Plaintiff telephoned Mr. Ray and launched into a shouting tirade.  She turned in her FMLA paperwork that same day.  So far as PBCM is aware, however, Plaintiff never exercised her FMLA rights or took any protected leave after she submitted that paperwork.

Throughout Plaintiff's tenure there were also multiple occurrences of insubordination. Part of this apparently stemmed from the fact that Plaintiff believed she was on equal footing with the Company Chairman (Travis Justus) and the Company President (Phillip Justus) with impunity. Examples of this including but as not limited to Plaintiff's refusal to report her absences and tardiness to the Human Resources head, Mr. Ray, even at the direct order of Travis Justus and Phillip Justus. She failed to carry out lawful directives of her supervisors, including

attending to the Nebraska licensure filing.    Plaintiff's insubordination toward the Company President, as well as the other issues detailed herein, led to the termination of her employment.

Plaintiff continued to flout other Company policies and directives. Pursuant to PBCM Operations Procedure #P¬11, requests to use earned vacation time must be submitted to management in writing no less than 30 days' prior to the time requested, and all vacation requests must be approved with two managers' signatures

Plaintiff claims that, on December 17, 2014, she submitted a vacation request for February 5 and 6, 2015. According to Company records, no such vacation request was ever submitted by Plaintiff to management, nor was such a request approved by President Phillip Justus or Human Resources. Rather, the vacation request was found folded up in Plaintiff's desk drawer after her departure.

On February 4, 2015 Plaintiff came into the office wearing jeans, in violation of the Company's dress code policy.  Plaintiff announced to the Company President that she would be taking the following two days, February 5 and 6, as vacation. This was the first Mr. Justus, or any other manager, had heard about this. Because this paperwork was never properly submitted by Plaintiff or approved by management, it was not on the calendar, management was not aware of Plaintiff's plan to be absent, and no plans had been implemented to cover her duties in her absence. Although Mr. Justus told Plaintiff that this late notice and unapproved vacation time was unacceptable, and he expected her to be at work, Plaintiff nonetheless took the time off.

Also, see PBCM's February 9, 2015 termination letter issued to Plaintiff.

**Interrogatory No. 4**.

Were there any written policies or regulations for PCBM that apply to sexual discrimination or medical leave? If so:

(a)       state the title and date of each Document containing the policies or regulations and a general description of the Document's contents;

(b)       state the manner in which the Documents were communicated to employees;

(c)       state the manner, if any, in which employees acknowledged receipt of the Document or knowledge of its contents, or both;

(d)       if you contend that Ms. Ross failed to use any available internal complaint procedures, state all facts that support that contention;

**Answer:**

Objection.  This interrogatory is overbroad as it lacks time parameters and to the extent it seeks information outside of the applicable statute of limitations period.  PBCM has not yet filed an Answer in this matter due to the pending Motion to Dismiss the Amended Complaint and thus has not formulated its defenses as Plaintiff's actionable claims and the basis for her claims, if any.  Accordingly, the information sought in this Interrogatory is not yet reasonably related to Plaintiff's claims.   PBCM will supplement this answer following the Court's ruling on PBCM's pending Motion to Dismiss the Amended Complaint.

**Supplemental Answer:**    Subject to and without waiving the above objections, see documents marked bate nos. PBCM 00089 -92.  See also, PBCM's Supplemental Answer to

11

Interrogatory No. 3.   Defendants will further supplement this answer following Plaintiff's deposition.

**Interrogatory No. 6**.

Identify each type of benefit to which Ms. Ross would have been entitled, from February 2015 to the present, if Ms. Ross had not been terminated. For each type of benefit, state the amount You would have paid to provide the benefit for the Ms. Ross during this time period and the value of the benefit to the Ms. Ross.

> **Answer:**

Objection.  This Interrogatory calls for speculation. The benefits provided are dependent upon the benefits selected by the employee and whether the employee opts to include a spouse and children onto the benefit plan.  Subject to and without waiving this objection, please see the attached payroll deduction authorization form for the 2015 – 2016 time periods.

**Supplemental Answer:**   The payroll deduction form is marked PBCM 00003 and was previously produced on December 2, 2017.

**Interrogatory No. 7**.

Do you contend that Ms. Ross has not made reasonable efforts to minimize the amounts of her lost income? If so:

(a)     describe what more Ms. Ross should have done;

(b)     describe all facts that support Your contention;

(c)     Identify all persons who have knowledge of facts to support Your contention;

(d)     Identify all Documents that support your contention;

12

**Answer:**

Objection. Contention interrogatories at this stage are premature, particularly since PBCM has not yet filed an Answer in this matter due to the pending Motion to Dismiss the Amended Complaint and thus has not formulated its defenses to Plaintiff's actionable claims, if any. PBCM has not yet contended anything in this matter. Additionally, parties are generally not required to respond to contention interrogatories until the discovery process is near its end. PBCM will supplement its Answer to this Interrogatory, if necessary, depending upon the Court's ruling on PBCM's pending Motion and the discovery developed in this matter.

**Supplemental Answer:** Subject to and without waiving the above Answer, PBCM states that is needs to take Plaintiff's deposition in order to respond to this Interrogatory. Plaintiff has not provided documents supporting her damages and only recently responded to Defendants' discovery requests. PBCM will supplement this answer following Plaintiff's deposition.

**Interrogatory No. 8**.

Have you or anyone acting on your behalf interviewed any individual concerning Ms. Ross's employment or the claims made in this case? If so, Identify the individual and state the date of the interview and Identify the person who conducted the interview.

**Answer:**

Objection. This Interrogatory seeks information that is protected by the attorney-client and work product privileges. Additionally, the dates of the interviews are not reasonably related to Plaintiff's claims. Subject to and without waiving its objections, PBCM states that its counsel

13

interviewed Christine A. Samsel, Esq. on or about June 16, 2016 and Jeb Judy on or about June 20, 2016.

**Supplemental Answer:**   Subject to and without waiving the above Answer, Ms. Samsel is an attorney  at Brownstein Hyatt Farber Schreck, 410 17th Street, Suite 2200, Denver CO 80202,  303-223-1133.  Mr. Judy is a former PBCM employee and thus PBCM does not have current contact information for Mr. Judy.

**Interrogatory No. 9**.

Identify each and every item you contend Ms. Ross disclosed that was "attorney-client privilege", "statutorily protected consumer information" or otherwise subjected Ms. Ross to some duty to not disclose. In doing so, please describe the information you contend was disclosed, the date that information was disclosed, Identify the person to whom you contend he information was disclosed, and the specific duty or privilege which applies.

**Answer:**

Objection.   Contention interrogatories at this stage are premature, particularly since PBCM has not yet filed an Answer in this matter due to the pending Motion to Dismiss the Amended Complaint and thus has not formulated its defenses to Plaintiff's actionable claims, if any.  PBCM has not yet contended anything in this matter.  Additionally, parties are generally not required to respond to contention interrogatories until the discovery process is near its end. PBCM will supplement its Answer to this Interrogatory, if necessary, depending upon the Court's ruling on PBCM's pending Motion and the discovery developed in this matter.

**Supplemental Answer:**    Subject to and without waiving the above Answer, PBCM states that it needs to take Plaintiff's deposition before answering this Interrogatory and will supplement that answer after her deposition is completed.    Additionally, please see Supplemental Answer to Interrogatory No. 13.   Plaintiff also emailed another individual's Accurint account information to her personal email address in violation of policies, on September 6, 2013.   See PBCM 000351-355, attached.

**Interrogatory No. 11**.

With regard to Ms. Ross's employment and termination, were all PCBM policies, rules and procedures in the followed? If not, please state: (a) each policy, rule or procedure not followed; (b) the individual failing to follow the rule, procedure or policy; and (c) the reason for the rule, procedure or policy having been violated.

**Answer:**

Objection.  This Interrogatory is vague and overbroad to the extent it seeks information pertaining to "all" of PBCM's policies and whether PBCM followed "all" of its policies during Plaintiff's employment.  This Interrogatory is vague and overbroad as it is not necessarily limited to Plaintiff, it lacks time parameters and PBCM cannot possibly answer whether it followed "all" of its policies in relation to every employee while Plaintiff was employed.  Additionally, this Interrogatory seeks information that is outside the applicable statute of limitations period and is not proportional to Plaintiff's claims, if any.   Plaintiff's claims and the facts relied upon in support of her claims are currently the subject of PBCM's Motion to Dismiss Plaintiff's Amended Complaint.   PBCM cannot reasonably answer Plaintiff's request until such time that

15

the Court rules upon the Motion.   Subject to and without waiving these objections, PBCM will supplement its answer following the Court's ruling on PBCM's Motion.

**Supplemental Answer:**   Subject to and without waiving the above Answer, PBCM adds that the Interrogatory is vague as in it is unclear whether Plaintiff is seeking the identification of PBCM policies that she violated which led to her termination or not.   Please also see PBCM's Supplemental Answer to Interrogatory No. 3 above.

<h2 align="center">REQUESTS FOR PRODUCTION</h2>

**Request for Production No. 4**.

Produce any and all personnel manuals, employee handbooks, benefit manuals, salary schedules, and supervisors manuals, including but not limited to PBCM Operations Procedures, which were in effect at any time during Ms. Sills' employment.

**Response:**

Objection.  This Request for Production seeks information that is not reasonably related to or proportionally related to the claims asserted in this matter.   PBCM does not have a record of "Ms. Sills' employment".   Additionally, this Request for Production lacks time parameters and seeks information that is outside the applicable statute of limitations period.   This Request for Production is overbroad and vague as it does not define what is meant by "personnel manuals" and "supervisors schedules".   A copy of the PBCM personnel file will be produced upon entry of a Protective Order in this matter.

**Supplemental Response:**    Subject to and without waiving the above Answer, the policies applicable to Plaintiff were previously produced.  See Bate Nos. PBCM 00076 – 128.

**Request for Production No. 5**.

Produce any documentation relating in any way to Ms. Ross's employment application, including all drafts and/or versions.

**Response:**

Objection.  This Request for Production is overbroad and vague to the extent is seeks "any documentation".  Subject to and without waiving its objections, see Ross' Personnel file, attached.

**Supplemental Response:**    Subject to and without waiving the above Answer, PBCM would not have drafts of Plaintiff's employment application.   Plaintiff's personnel file was previously produced.  See PBCM 00065 – 00168.

**Request for Production No. 8**.

Produce all e-mails, notes, memoranda or other Documents that relate or pertain to any and all communications by, between, or among any of Your current or former employees, officers or representatives that in any way relate or pertain to Ms. Ross.

**Response:**

Objection.  This Request for Production is without time parameters, seeks information that is outside the scope of the applicable statute of limitations period, is overbroad and vague and is not reasonably related to or proportional to Plaintiff's claims in this matter.  Plaintiff is essentially seeking every single document over a three year period that contains Plaintiff's name

17

or in any way "relates or pertains" to Plaintiff, regardless of whether it has any application to her claims.  Plaintiff's Request would require PBCM to conduct a search of every single employee's documents, emails, files, and so forth which would amount to countless hours of work and likely the review of hundreds of thousands of documents.  Furthermore, in light of Plaintiff's former position for PBCM, this Request for Production seeks information that is protected by the attorney-client and work product privileges.    PBCM cannot possible respond to Plaintiff's Request for Production.

**Supplemental Response:**  Subject to and without waiving the above, PBCM states, see Defendants' Initial Disclosure Documents and documents produced with PBCM's Discovery Responses on December 2, 2016.

Respectfully submitted this 28th day of April, 2017.

> By: */s/ Kristi L. Blumhardt*
>
> Kristi L. Blumhardt
> McElroy, Deutsch, Mulvaney & Carpenter, LLP
> 5600 South Quebec Street, Suite C100
> Greenwood Village, Colorado 80111
> Tel:  (303) 293-8800
> Fax: (303) 839-0036
> kblumhardt@mdmc-law.com
> *Attorneys for Defendants Professional Bureau of Collections of Maryland, Inc., Phillip Justus and Travis Justus*

EXHIBIT D

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of April, 2017, I electronically filed the foregoing, Defendant PBCM's Supplemental Responses to Plaintiff's First Set of Combined Discovery Requests via email as follows:

Eric R. Coakley
Coakley Krol
2323 Central Park Boulevard
Suite 100
Denver, CO  80238
coakley@coakleykrol

Andrew Hurd
Miller & Law PC
1900 W. Littleton Blvd.
Littleton, CO 80120
adh@millerandlaw.com

/s/ Kristi L. Blumhardt
Kristi L. Blumhardt
McElroy, Deutsch, Mulvaney & Carpenter, LLP
5600 S. Quebec Street, Suite C100
Greenwood Village, Colorado 80111
Tel:  (303) 293-8800
Fax: (303) 839-0036
E-mail: kblumhardt@mdmc-law.com
*Attorneys for Defendants Professional Bureau of Collections of Maryland, Inc., Phillip Justus and Travis Justus*

19

EXHIBIT D